## MANHATTAN LIGHTERAGE CORP. v. ESSO STANDARD OIL CO.

### THE MANHATTAN NO. 83.
United States District Court
S. D. New York.
May 2, 1951.

Burlingham, Veeder, Clark & Hupper, New York City (Stanley R. Wright, New York City, of counsel), for libelant.

Kirlin Campbell & Keating, New York City (Raymond T. Greene, New York City, of counsel), for respondent.

WEINFELD, District Judge.

Libelant seeks to recover damages caused to its scow when it was struck by respondent's barge. At the time of collision both were in tow.

The Tug National, owned by libelant, was proceeding southerly in the North River, New York, with three vessels in tow on one hundred twenty foot hawsers. The first tier consisted of the Lighter Hanover on the port side and scow Manhattan No. 86 on the starboard side; scow Manhattan No. 83, the subject of this suit, was tailing astern of Manhattan No. 86, closeup. All three vessels were stern first.

The respondent's tow was also proceeding southerly, immediately prior to the collision. Its Esso Barge No. 318 was in tow of Esso Tug No. 3 with the barge on the starboard side of the tug, bow first and extending about ninety feet forward of the pilot house of the tug. It was the barge which crashed into Manhattan No. 83 at right angles.

The Esso tow rode astern of the National tow for some distance downstream the North River when the latter turned to port to go into pier 7, Manhattan, at a point about twelve hundred feet off the Manhattan shore, where the collision occurred.

The National, to indicate that she was towing one or more vessels astern, was required to carry three bright lights on her foremast not less than three feet apart. Pilot Rules for Inland Waters—Article 3; pamphlet of August 1, 1949—C.G. 169. She did carry three staff lights but the lowest was not visible from astern, it being blocked by the superstructure of the Hanover so that only two of her lights were visible to the Esso. This was contrary to Article 3 of regulations which provided that "Each of these lights shall be of the same construction and character, and shall be carried in the same position as the white light mentioned in article 2(a) or the after range light mentioned in article 2(f)." In addition to the foregoing violation, only one light was displayed on Hanover and Manhattan No. 86, the head boats of the tow, instead of two lights as specified in the Rules, Section 80.17(e), supra. There is indeed substantial dispute that Manhattan No. 86 carried even the one light.

Upon the conclusion of the trial the Court ruled that libelant's failure to exhibit regulation lights on its hawser tow contributed to the collision but reserved decision as to whether the respondent was also at fault.

The libelant contends that whatever its fault with respect to the lights, this was a minor factor and that the collision resulted from the major fault of the Esso Tug No. 3 primarily in failing to keep a good lookout. It urges that had a lookout been stationed on the open deck of Esso Barge No. 318 instead of the pilot house of the tug, the collision would have been avoided. Whether or not respondent shall be called upon to divide the damages depends in large measure upon the determination of this issue.

▮ Upon further analysis of the testimony and examination of the exhibits and diagrams received in evidence, the Court concludes that libelant's failure to observe the regulations with respect to proper lights was misleading to the Esso and was the major cause of the collision. This must follow from the fact that the Esso did see such lights as the National displayed as were visible astern but they served to misinform rather than to advise that there was a hawser tow.

The Mate of the Esso tug first picked up the tow lights of the National tow off pier 19, North River, when an object loomed ahead about seven hundred fifty to one thousand feet. Both tows were heading downstream about one thousand to twelve hundred feet off the pier heads with the Esso astern of the National tow and were proceeding at about the same rate of speed.

When the vessels were off pier 7, Manhattan, the National came hard left towards the pier and then for the first time the full staff lights of the National were visible, indicating that it had a hawser tow. It was also discovered by the crew of the Esso that Manhattan No. 83 formed part of the tow and although Esso Tug No. 3 put her engines full speed astern it was too late and the bow of the Esso barge crashed into Manhattan No. 83. While the evidence does support libelant's claim that there was a light on the Manhattan No. 83, it appears that it was on the forward side of the bulkhead—at least the Court so finds—so that it was not visible astern. The testimony of the Mate and Captain of the Esso that they were misled by the two lights of the National and the one on the Hanover into believing the tow consisted of a tug with a barge on port side, is entirely credible.

As to the contention that had the lookout been on Esso Barge No. 318 instead of on the Esso tug the collision might have been avoided, the Court is of the view that the evidence does not support the claim and at best it is speculation. The claim is that the bright white light on the forward starboard side of Esso Barge No. 318 blocked the vision of the lookout in the pilot house and had he been stationed instead, some ninety feet forward on the barge, he would have seen libelant's scows looming sooner and in ample time to give warning to the navigator even if there had been no lights on them. Had the lookout been on the barge he would have seen no more than he did from his position on the tug. The fact is that members of the Esso tow did see the two mast lights on the National and single light on the port side of the Hanover, a distance of some seven hundred fifty to one thousand feet, but the light on Manhattan No. 83 was not visible. The Esso tow consequently was led to believe that there was a substantial open distance between Hanover and it, when, in fact, the distance was foreshortened considerably—the two lengths of the scows plus one hundred twenty feet of hawser—a total of almost three hundred fifty feet. At best, libel-ant's position on this point is in the realm of probability and the proof is far from clear that an advanced position of ninety feet would have avoided the result. Here the libelant grossly violated the very rules promulgated to avoid collisions and as the cases put it, her fault was obvious and egregious. On the other hand, the fault of respondent is doubtful. Harbor Oil Transport Co. of Conn. v. The Plattsburgh Socony, 2 Cir., 151 F.2d 708.

### Findings of Fact

1) About 5:45 P.M. on December 5th, 1947, in a position about twelve hundred feet off pier 7, North River, New York, a collision occurred between libelant's scow, Manhattan No. 83, in tow of Tug National, and respondent's Esso Barge No. 318, in tow of Esso Tug No. 3. The point of contact was between the starboard forward corner of the Esso Barge No. 318 and the port side midships of the scow Manhattan No. 83 as being towed.

At the time of the collision the tide was ebb, the weather conditions were hazy but it was clearing up; visibility, fair; wind, negligible. It was dark but both New Jersey and New York shores were distinguishable.

2) Tug National was proceeding southerly in the North River with three vessels in tow on one hundred twenty foot hawsers. In the head tier on the port side was the Stick Lighter Hanover, alongside of her was the scow Manhattan No. 86, directly astern of which was scow Manhattan No. 83. All three vessels were being towed stern first.

3) The Tug National was carrying three staff lights to indicate that she had a tow astern but the lowest of the three lights was not visible from astern and was blocked by the superstructure of the Hanover.

4) The Hanover carried a light on her forward port corner as towed but did not carry a white light visible on her after outboard corner as required by statute.

5) The Manhattan No. 86 carried a lantern light on the forward outboard corner but did not carry a white light on her

after outboard corner as required by statute.

6) The Manhattan No. 83 did carry a light on her after outboard corner attached to the aft bulkhead but it was so situated that it did not show all around the horizon and was not visible to vessels astern to the port side.

7) The Esso tow was made up with the Esso Barge No. 318 being towed bow first on the starboard side of the Esso Tug No. 3. Esso Barge No. 318 is one hundred fifty-one feet long with a twenty-seven foot beam. Esso Tug No. 3 is ninety-six feet long. The bow of the barge extended ninety feet forward of the tug's pilot house, where the lookout was stationed.

8) The Esso tug and barge were displaying regulation navigation lights, including a bright white light on a six-foot pole on the barge's starboard bow visible all around the horizon for a distance of upward of two miles.

9) The Tug National and her tow were proceeding down the New York side of the North River bound from pier 84 to pier 7, North River.

The Tug Esso and her tow were bound from Hoboken to Staten Island and crossed over to the New York side before heading downstream, a little to port of right astern of the National's tow.

10) Prior to the collision both tows were proceeding southerly in the North River about twelve hundred feet off the pier heads with the Esso tow between six hundred and one thousand feet astern of the National tow and with both tows proceeding at about the same rate of speed.

11) The Esso tow first observed the National tow ahead about one thousand feet off pier 19, at which time the Esso tow observed two vertical staff lights and one single white light some distance to port of and lower than the staff lights at a distance of between seven hundred fifty and one thousand feet, which led the staff of the Esso to believe that the flotilla ahead was made up of a tug with a barge alongside to port.

12) The Esso tow continued to follow astern of the National tow closing slightly on the lead tow until the vessels were about twelve hundred feet abreast pier 7, at which time the National tow veered sharply to the left towards the Manhattan shore and for the first time the three staff lights of the National were brought to a position clear of the Lighter Hanover so as to be visible to the Esso tow and for the first time indicated to the tow astern that the National had a hawser tow.

13) Immediately thereafter and while the National tow was still on the left swing those aboard the Esso tow for the first time made out the dark and unlighted shape of the scow Manhattan No. 83 on the Esso tow's starboard barge. Immediately upon sighting the Manhattan No. 83, Esso Tug No. 3 put her engines full speed astern, a hard right wheel was executed and a danger signal sounded. However, this action was not successful and the Esso Barge No. 318 collided with the scow Manhattan No. 83 causing the damage which is the subject matter of this litigation.

14) The Tug National accompanied her left swing with a one blast signal. The members of her crew testified they thought they heard a one blast response from Esso indicating that she would swing to her right to pass outside the National's tow. However, the proof does not sustain any finding that the National's signal was heard by the Esso tow or that any signals were sounded by the Esso tow other than the danger signal.

15) The lookout of the Esso tow was stationed in the pilot house of the tug, which in view of the makeup of the tow and the weather conditions then existing, enabled him to perform his duties.

### Conclusions of Law

1) The Tug National and her tow were grossly at fault for failing to exhibit proper lights on its tow contrary to statutory requirements and that such violation accounts for the collision with the Esso tug and tow.

2) The evidence of fault on the part of Esso in contributing to the collision is not so clear and convincing as to require a division of damages.

3) The respondent is entitled to a decree dismissing this libel but without costs.